ace

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CITY OF CHANUTE, KANSAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-4096-JAR-JPO** |
| | ) | |
| **KANSAS GAS AND ELECTRIC** | ) | |
| **COMPANY and WESTAR ENERGY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER DENYING
## PLAINTIFF'S MOTION TO REMAND

This matter comes before the Court on plaintiff City of Chanute's Motion to Remand (Doc. 13).  The Court held a hearing on plaintiff's motion on March 30, 2007.  After reviewing the parties' filings and the arguments presented at the hearing, the Court is now prepared to rule.  For the reasons stated below, the Court denies plaintiff's motion to remand.

### *Background*

Plaintiff City of Chanute is a municipal corporation that owns and operates its own electricity generating plant.  Since at least 1970, plaintiff has contracted with defendants Kansas Gas and Electric Company and Westar Energy, Inc. to purchase Schedule C energy, or "supplemental energy," when purchasing this energy is cheaper than generating the energy from plaintiff's own electricity generating plant.  In 1995, plaintiff entered into a Generating Municipal Electric Service Agreement (the "1995 contract") with defendants that remains in effect until December 31, 2009.  Under the 1995 contract, plaintiff has the right to purchase

Schedule C energy from defendants, subject to certain conditions.  Plaintiff claims that, effective January 1, 2003, defendants unilaterally changed the manner in which Schedule C energy was made available to plaintiff and that by doing so, defendants breached the terms of the 1995 contract.  Plaintiff contends that defendants arbitrarily moved plaintiff to a lower position on the priority list, or "pricing stack," causing the cost of energy to increase dramatically.  Plaintiff also contends that defendants breached the 1995 contract by failing to provide timely and accurate forecasts of the costs for Schedule C energy, and by overcharging plaintiff for energy purchased under the 1995 contract through inconsistent and incomprehensible invoicing practices.

On July 25, 2006, plaintiff filed suit against defendants in the District Court of Neosho County, Kansas alleging in their petition a breach of contract claim and seeking a declaratory judgment interpreting the terms of the 1995 contract.  On August 30, 2006, defendants removed the action arguing that the federal court has exclusive jurisdiction under the Federal Power Act (the "FPA").[1]  Plaintiff now seeks remand, claiming that this action does not invoke federal question jurisdiction because plaintiff's claims rely purely on Kansas state law.

### *Applicable Law*

"The district courts of the United States . . . are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'"[2]  A civil action is removable only if plaintiffs could have originally brought the action in federal court.[3]  The court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject

---

[1] 16 U.S.C. §§ 791a–828c.

[2] *Exxon Mobil Corp. v. Allapattah Servs.*, 543 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[3] 28 U.S.C. § 1441(a).

matter jurisdiction."[4]  The rule is inflexible and without exception, and requires a court to deny

its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record.[5]

As the parties invoking federal jurisdiction, defendants bear the burden of proving the

requirements of federal jurisdiction.[6]  A defendant may remove an action to federal court

pursuant to 28 U.S.C. § 1441 if the plaintiff's "well-pleaded complaint" presents a federal

question, such as a federal cause of action, or demonstrates a diversity of citizenship between the

parties.[7]

Defendants have sought removal of this action pursuant to 28 U.S.C. § 1441(b) that

provides:

> Any civil action of which the district courts have original
> jurisdiction founded on a claim or right arising under the
> Constitution, treaties or laws of the United States shall be
> removable without regard to the citizenship or residence of the
> parties.

Defendants contend that this Court has jurisdiction pursuant to 28 U.S.C. § 1331[8] because

plaintiff's claims arise under the laws of the United States, specifically the FPA.  In order for a

civil action to "arise under" the laws of the United States, a federal right or immunity must be an

essential element of plaintiff's cause of action, and the federal controversy "must be disclosed

---

[4] 28 U.S.C. § 1447(c).

[5] *Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1257 (D. Kan. 2004) (citing *Ins. Corp. of Ireland, Ltd. v. Compangnie des Bauxites de Guinee*, 456 U.S. 684, 702 (1982)).

[6] *In re Adoption of Baby C.*, 323 F. Supp. 2d 1082, 1084 (D. Kan. 2004)(citation omitted), *aff'd sub nom. Baby C. v. Price*, 138 Fed. App'x 81 (10th Cir. 2005).

[7] *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[8] This statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

upon the face of the complaint, unaided by the answer or petition for removal."[9]  Moreover, "a

defense predicated upon federal law is not enough by itself to confer federal jurisdiction even

though the defense is certain to arise."[10]

The Tenth Circuit has set forth the following to determine whether a complaint, on its

face, asserts a federal question:

> A case "arises" under the laws of the United States if it clearly and
> substantially involves a dispute or controversy respecting the
> validity, construction or effect of such laws which is determinative
> of the resulting judgment.  Thus, if the action is not expressly
> authorized by federal law, does not require the construction of a
> federal statute and/or regulation and is not required by some
> distinctive policy of a federal statute to be determined by
> application of federal legal principles, it does not arise under the
> laws of the United States for federal question jurisdiction.[11]

In this case, defendants allege that plaintiff's claims, although premised on a breach of contract

theory under state law, in fact invoke this Court's federal question jurisdiction because the cause

of action requires the application of the FPA, which is federal law.

*Analysis*

Initially, the Court recognizes that plaintiff's well-pleaded Complaint does not assert any

federal claims.  The Complaint does not invoke the FPA, nor does it cite any other federal law.

Rather, plaintiff's Complaint refers only to state law claims.  The Supreme Court has recognized

---

[9]*Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936) (citations omitted).

[10]*Madsen v. Prudential Fed. Savings & Loan Assoc.*, 635 F.2d 797, 801 (10th Cir. 1981) (citations omitted); *see also Gully*, 299 U.S. at 113 ("Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.").

[11]*Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375, 1381 (10th Cir. 1978) (citing *Shulthis v. McDougal*, 225 U.S. 561 (1912); *Lindy v. Lynn*, 501 F.2d 1367 (3d Cir. 1974)).

that "'the party who brings a suit is master to decide what law he will rely upon.'"[12]  A plaintiff

may avoid federal jurisdiction by exclusive reliance on state law.[13]  However, under the "artful

pleading doctrine," plaintiff may not circumvent federal jurisdiction by failing to plead federal

questions that are essential elements of plaintiff's claim.[14]

Defendants argue that even though plaintiff's Complaint fails to state a federal claim,

plaintiff is, in actuality, asserting claims arising under federal law and therefore removal is

proper based on the artful pleading doctrine.  Defendants contend that plaintiff's claims are

subject to the exclusive federal jurisdiction under the FPA.  Section 317 of the FPA grants to the

District Courts of the United States exclusive jurisdiction of violations of the Act and of all suits

in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any

violation of the Act or of any rule or regulation or order thereunder.[15]  Defendants contend that

while plaintiff brings a claim for breach of contract, the contract in question is actually a tariff

that was filed with the Federal Energy Regulatory Commission ("FERC"), and that once a

contract is filed with FERC, it becomes "more than a contract between private parties; it is

federal law."[16]  As described below, the Court agrees.

The FPA is a federal rate-regulation statute enacted by Congress that gives FERC the

---

[12]*Pan Am. Petroleum Corp. v. Superior Court of Delaware*, 366 U.S. 656, 663 (1961) (quoting *Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).

[13]*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citations omitted); *see also Landon v. N. Natural Gas Co.*, 338 F.2d 17, 20 (10th Cir. 1964) ("[T]he complaint determines the nature of the action.").

[14]*Schmeling v. NORDAM*, 97 F.3d 1336, 1339, 1345 n.2 (10th Cir. 1996) (citations omitted).

[15]16 U.S.C. § 825p.

[16]*T & E Pastornio Nursery v. Duke Energy Trading*, 268 F. Supp. 2d 1240, 1246 (S.D. Cal. 2003) (citing *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998) (citing *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520 (1939))) ("A tariff filed with a federal agency is the equivalent of a federal regulation.").

power to regulate the sale of electric energy across state lines.[17]  The FPA requires every public

utility file with FERC "all rates and charges for any transmission or sale subject to the

jurisdiction of the Commission, and the classifications, practices, and regulations affecting such

rates and charges, together with all contracts which in any manner affect or relate to such rates,

charges, classifications, and services."[18]  The rates filed must be "just and reasonable."[19]  In this

case, the 1995 contract between the parties was accepted for filing with FERC.  However,

plaintiff argues that while FERC accepted the 1995 contract, such acceptance does not mean that

the contract is FERC-approved when FERC specifically informed defendants that the acceptance

for filing "does not constitute approval of any service, rate, charge, classification, or any rule,

regulation, contract or practice . . . ."[20]  Yet, "the legality of rates so filed is not conditioned upon

the Commission's approval.  Unless they are challenged . . . the filed rates become legal rates."[21]

Accordingly, the 1995 contract is the legal rate, which is the equivalent to a federal regulation.[22]

    Under the jurisdictional provision of the FPA, federal courts have exclusive jurisdiction

of violations of the FPA or the "rules, regulations and orders thereunder" and of suits to enforce

---

[17]*Jersey Cent. Power & Light Co. v. Fed. Power Comm'n*, 319 U.S. 61, 68 (1943).

[18]16 U.S.C. § 824d(c).

[19]§ 824d(a).

[20](Doc. 13, Ex. 1 at 1.)

[21]*Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 255–56 (1951).

[22]*See New York State Elec. & Gas Corp. v. New York Indep. Sys. Operator Inc.*, No. 00-CV-1526HGMGJD, 2001 WL 34084006, at *6 (N.D.N.Y. Jan. 19, 2001) ("[F]ederally filed tariffs are not mere contracts but are in effect federal law . . . ."); *see also Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 432 (4th Cir. 2004) ("And we are further cognizant that a filed tariff carries the force of federal law." (citations omitted)); *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998) ("A tariff filed with a federal agency is the equivalent of a federal regulation." (citations omitted)); *Marcus v. AT&T Corp.*, 138 F.3d 46, 56 (2d Cir. 1998) ("[F]ederal tariffs are the law, not mere contracts." (citations omitted)); *MCI Telecomms. Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 387 (8th Cir. 1992) (same).

any liability or duty created by the FPA or any "rule, regulation, or order thereunder."[23]  Because a tariff filed with a federal agency is the equivalent of a federal regulation, the term "regulation" as provided in the exclusive jurisdiction provision of the FPA "necessarily includes FERC-approved tariffs filed by public utilities . . . ."[24]  Therefore, "federal courts have exclusive jurisdiction over any claims involving violations of the [filed] tariffs."[25]

While plaintiff argues that its claims amount to a simple breach of contract action under state law, plaintiff alleges that defendants unilaterally moved plaintiff's position on the pricing stack in violation of the terms of 1995 contract.  Thus, plaintiff is alleging a violation of the FERC-filed tariff which "assume[s] the mantel of federal law by virtue of [its] filing with FERC . . . ."[26]  Accordingly, "the conclusion that federal subject matter jurisdiction exists and the action was properly removed seems inevitable."[27]

Other federal courts have reached similar results in the context of the Federal Communications Act.[28]  In *Marcus v. AT&T Corporation*,[29] the Second Circuit upheld defendant's removal of a breach of warranty claim based on the artful pleading doctrine.  The court reasoned that because the breach of warranty claim, in essence, sought to enforce the terms

---

[23]16 U.S.C. § 825p.

[24]*T & E Pastornio Nursery v. Duke Energy Trading*, 268 F. Supp. 2d 1240, 1246 (S.D. Cal. 2003).

[25]*Id.*

[26]*New York State Elec. & Gas Corp.*, 2001 WL 34084006, at *6.

[27]*Id.*

[28]The Seventh Circuit has recognized the similarity between public utility regulation and telecommunications regulation by stating that both types of regulations are "essentially the same form of regulation, the term 'common carrier' being generally used of firms providing transportation or communications and 'public utility' of firms providing electricity or gas."  *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998).

[29]138 F.3d 46 (2d Cir. 1998).

of an agreement between defendant and its customers, the only possible source of such agreement was a tariff filed with the Federal Communications Commission under the Federal Communications Act.[30]  Thus, because "'tariffs conclusively and exclusively enumerate the rights and liabilities of the contracting parties,'" the breach of warranty claim arose under federal law, and federal jurisdiction was proper.[31]  In *MCI Telecommunications Corp. v. Garden State Investment Corp.*,[32] the Eighth Circuit found that plaintiff's action to recover unpaid service charges was subject to federal jurisdiction.[33]  The court determined that because the relationship between the parties arose under the Federal Communications Act and the tariff required by that Act, the federal courts had subject matter jurisdiction over the action.[34]

Further, in the context of the Interstate Commerce Act,[35] the Supreme Court has found that an interstate carrier's claim for recovery of payment owed under a tariff filed pursuant to the Interstate Commerce Act raises a federal question because "'[a]s to interstate shipments . . . the parties are held to the responsibilities imposed by the federal law, to the exclusion of all other

---

[30]*Id.* at 56.

[31]*Id.* (quoting *Am. Tel. & Tel. Co. v. New York City Human Res. Admin.*, 833 F. Supp. 962, 970 (S.D.N.Y. 1993)).

[32]981 F.2d 385 (8th Cir. 1992).

[33]*Id.* at 388.

[34]*Id.*

[35]The Interstate Commerce Act was the model for subsequent federal rate-regulation statutes such as the FPA.  *Verizon Commc'ns v. F.C.C.*, 535 U.S. 467, 478 n.3 (2002).  The Court recognizes that while the Interstate Commerce Act precludes private rate agreements by its requirement that the rates to all shippers be uniform, the FPA expressly allows rates to be set by individual contracts.  *United Gas Pipe Line Co. v. Mobile Gas Servs. Corp.*, 350 U.S. 332, 338 (1956).

rules of obligation.'"[36]  Similarly, this case involves allegations that defendants overcharged

plaintiff for energy purchased under the 1995 contract by moving plaintiff to a lower position on

the pricing stack.  Thus, because the parties are held to the responsibilities imposed by the 1995

contract, which carries the force of federal law through its filing with FERC, this action arises

under federal law.  Further, in *Bernstein Bros. Pipe & Machinery Co. v. Denver & Rio Grande

Western Railroad Co.*,[37] the Tenth Circuit held that construction of a tariff filed pursuant to the

Interstate Commerce Act was a question of federal law.[38]  Likewise, plaintiff's claims will

require construction of the 1995 contract to determine whether defendants violated the contract

by moving plaintiff on the pricing stack, and such construction of the FERC-filed tariff

implicates federal law.

　　　　To support its argument that its breach of contract claims do not fall under the exclusive

jurisdiction provision of the FPA, plaintiff relies on the Supreme Court's decision in *Pan

American Petroleum Corp. v. Superior Court of Delaware* ("*Pan American*").[39]  In *Pan

American*, Cities Service Gas Company ("Cities Service") sought to recover certain

overpayments made to Pan American and Texaco, producers of natural gas, after an order of the

Kansas Corporation Commission ("KCC") was declared invalid.[40]  Cities Service initially

entered into contracts with Pan American and Texaco to purchase natural gas at a price less than

---

[36]*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) (quoting *Louisville & Nashville R. v. Rice*, 247 U.S. 201, 202 (1918)).

[37]193 F.2d 441 (10th Cir. 1952) (citations omitted).

[38]*Id.* at 444.

[39]366 U.S. 656, 663 (1961).

[40]*Id.* at 660–61.

eleven cents per thousand cubic feet.[41]  Afterwards, the KCC issued an order establishing the minimum price of eleven cents per thousand cubic feet, thereby requiring Cities Service to pay a higher rate than that specified in their pre-existing contracts.[42]  Cities Service challenged the KCC order in Kansas state court and simultaneously advised Pan American and Texaco by letter dated January 21, 1954, that it would involuntarily pay for its gas purchases in compliance with the KCC order as to avoid any penalties, but that such payment was not an acquiescence to the order's validity and that it would expect a refund for the amount of overpayment in the event the order was judicially declared invalid.[43]  Pan American and Texaco accepted the payments on this basis.[44]

While the litigation challenging the KCC order was pending, the Federal Power Commission ("FPC")[45] issued an order requiring natural gas producers to file rate schedules with the FPC.[46]  Texaco filed its basic contract with Cities Service, an amendatory letter, sample billing statements, the KCC order, and the Cities Service letter of January 21, 1954; Pan American filed its basic contract with Cities Service, a number of supplemental letters and agreements (not including the letter of January 21, 1954), a sample billing, and the KCC order along with an explanation that the KCC order amended the contract.[47]

---

[41]*Id.* at 658.

[42]*Id.*

[43]*Id.* at 658–59.

[44]*Id.* at 659.

[45]The Federal Power Commission was the predecessor to FERC.  *See* 42 U.S.C. § 7172(a); *see also* Exec. Order No. 12009, 42 Fed. Reg. 46,267 (Sept. 13, 1977).

[46]*Pan Am.*, 366 U.S. at 660.

[47]*Id.*

After the Supreme Court struck down the validity of the KCC order, Cities Service brought suit against Pan American and Texaco in Delaware state court for the overpayments made pursuant to this invalid order under state law theories of contract and quasi-contract.[48]  Pan American and Texaco challenged the state court's jurisdiction over the action, arguing that the claims arose under the Natural Gas Act,[49] which grants federal courts exclusive jurisdiction.[50]  The Supreme Court disagreed finding that no claims had been asserted under the Natural Gas Act, and therefore the Court was "not called upon to decide the extent to which the Natural Gas Act reinforces or abrogates the private contract rights here in controversy."[51]  Rather, the Court found that Cities Service had only asserted rights under traditional common law claims, which "do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas."[52]  Therefore, the Court held that the state court of Delaware had jurisdiction to hear and decide Cities Service's state law claims.[53]

The facts of *Pan American* are distinguishable from this case, however.  In *Pan American*, Cities Service sought to recover overpayments made to defendants under the original contract and a supplemental "option contract based on a future litigation event" which "did not

---

[48]*Id.* at 660–61.

[49]The Natural Gas Act and the FPA "'are in all material respects substantially identical.'" *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 578 n.7 (1981) (quoting *FPC v. Sierra Pac. Power Co.*, 350 U.S. 348, 353 (1956)).

[50]*Pan Am.*, 366 U.S. at 662.

[51]*Id.* at 663–64.

[52]*Id.*

[53]*Id.* at 666.

implicate the federal regulatory scheme."[54]  In that case, there was no dispute over the rate.  The

rate in the original contract was less than eleven cents per thousand cubic feet.  After the KCC

Order was issued, Cities Service was required to pay the minimum price of eleven cents, but did

so under protest as explained in the option contract.  However, in this case, the entire dispute is

based on how the pricing is formulated under the 1995 contract.  In *Pan American*, the courts

were not required to construct the terms of the federally filed contract, whereas in this case, a

court must necessarily construct the 1995 contract to determine what the terms of the parties'

agreement were and whether defendant was in violation of this agreement when it moved

plaintiff's position on the pricing stack.

Also, the Supreme Court has subsequently described the *Pan American* case as

concluding that "a state rather than a federal court was the proper forum in which a buyer should

bring a breach-of-contract action to obtain a refund of charges in *excess* of the filed rate."[55]  In

this case, plaintiff is not seeking a refund in excess of the rate.  Rather, the dispute is over how

the rate should have been calculated under the 1995 contract and whether defendant violated the

contract by moving plaintiff on the pricing stack, thereby causing plaintiff to pay higher prices

for energy.  Thus, this is not a simple breach of contract action to determine what charges were

paid in excess of the rate, but instead this action requires a court to construct the language of the

1995 contract and to determine whether defendants were in violation of this federally filed tariff.

Such an action arises under federal law, and state court is not the proper forum for this dispute.

The Court also distinguishes the other cases upon which plaintiff relies in arguing for

---

[54]*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 843 (9th Cir. 2003) (citing *Pan American*, 366 U.S. at 663).

[55]*Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 582 n.12 (1981) (emphasis in original).

remand of this action.  In *Yankee Gas Services Co. v. Connecticut Power & Light Co.*,[56] the District Court of Connecticut remanded an action to state court finding that plaintiff's breach of contract and unfair business practice claims did not arise under the Natural Gas Act.[57]  In that case, it does not appear that the agreement between the parties was a federally filed tariff. Further, the dispute in that case was whether plaintiff had a right to bid on the construction and maintenance of a pipeline and whether one of the defendants engaged in unfair business practices by using the rate structure to subsidize the construction of the pipeline.  There was no dispute in that case over the proper construction or the alleged violation of a filed rate, as is the controversy in this case.  Therefore, the Court finds *Yankee Gas Services* inapplicable to this action.  Further, the Court distinguishes this case from *Consolidated Edison Co. of New York v. Entergy Nuclear Indian Point 2*,[58] in which that court found that there was not complete preemption of plaintiff's state law claims under the FPA.[59]  In this case, defendants conceded at oral argument that there is not complete preemption in this case, but that is not the theory under which defendants argue that removal is proper.  Rather, defendants have shown that plaintiff has artfully plead claims that arise under federal law, giving this Court jurisdiction over the action.

Finally, plaintiff also points to various FERC cases in which the Commission declined to

---

[56]No. 3-97-CV-1025, 1998 WL 698763 (D. Conn. March 16, 1998).

[57]*Id.* at *4–5.

[58]No. 05-CV-0222(RO), 2006 WL 929208 (S.D.N.Y. Apr. 7, 2006).

[59]*Id.* at *3 ("The entire contractual relation between Con Edison and defendants is not entirely defined by federal law. . . . When parties contract to pay state-jurisdictional rates on state-jurisdictional services, a suit to enforce that promise belongs in state court.  Thus, there is a contractual undertaking left for the state to enforce, and there is no federal question jurisdiction over Con Edison's contract claim.")

exercise its primary jurisdiction and remanded the actions back to state court for adjudication.[60] In those cases, however, and as plaintiff conceded at oral argument, FERC was not called upon to determine whether the action was subject to federal jurisdiction.  Instead, FERC was asked to exercise its primary jurisdiction over the matter, and when it declined to exercise primary jurisdiction, FERC remanded the action back to the court in which the action was pending. FERC made no determination in these cases as to whether federal or state jurisdiction was the appropriate forum for the action.[61]  Thus, these cases also do not provide a basis for the Court to remand this action to state court.

For the reasons set forth above, the Court holds that plaintiff's claims, while artfully plead, arise under federal law and therefore federal jurisdiction over this action is proper. Plaintiff's claims are not mere breach of contract claims when plaintiff seeks construction of a federally filed tariff and a ruling that defendants violated the terms of this tariff by moving plaintiff's position on the pricing stack, causing the cost of energy to increase.  Because these claims arise under federal law, this Court has subject matter jurisdiction over these federal claims. Accordingly, plaintiff's Motion to Remand is denied.

---

[60]*Doswell Ltd. P'ship v. Va. Elec. & Power Co.*, 61 F.E.R.C. ¶ 61,196, at 61,731 (1992) (stating "[i]ssues of interpretation of a contract on file with the Commission are within the Commission's concurrent jurisdiction with the courts" and finding that the Commission was not in a better position than the Virginia state court to interpret the contract in accordance with Virginia contract law); *Rio Grande Elec. Coop. v. Cent. Power*, 77 F.E.R.C. ¶ 61,245, at 61,978 (1996) (declining to exercise jurisdiction in "a routine matter of contract interpretation which is best left for the court"); *Portland Gen. Elec. Co.*, 72 F.E.R.C. ¶ 61,009, at 61,022 (1995) (declining jurisdiction and allowing the Oregon state courts to interpret the contract); *Florida Power Corp.*, 68 F.E.R.C. ¶ 61,351, at 62413 (1994) (holding that the contractual dispute should be resolved by the state court and stating "[t]he Commission does not possess any special expertise concerning the construction of contract provisions such as those at issue in this case.").

[61]Plaintiff pointed out at oral argument that a footnote in *Portland General Electric* shows that the plaintiff in that case originally filed the action in state court, and defendant removed the case to federal court.  *Portland Gen. Elec. Co.*, 72 F.E.R.C. ¶ 61,009, at 61,022 n.6 (1995).  On December 19, 1994, the federal court remanded the action to state court.  *Id.*  While this may be the procedural history of that case, the FERC opinion does not explain the district court's reasoning for remand or provide any other information about this ruling.  Thus, the Court will not rely on this footnote to support plaintiff's argument for remand.

*Conclusion*

As explained above, plaintiff's Motion to Remand is denied.  On February 8, 2007, the Court grated an interim stay (Doc. 28) until the jurisdictional issues in this action were resolved. Because the Court has determined that this case is properly before this Court, the stay will be lifted so that this action may proceed.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion to Remand (Doc. 13) is **DENIED**.

**IT IS SO ORDERED**.

Dated this  4th  day of April 2007.

   S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

15